UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

RITA RAE CLARK,                    )
                                   )  No. CV-10-0033-CI
          Plaintiff,               )
                                   )  ORDER GRANTING PLAINTIFF'S
v.                                 )  MOTION FOR SUMMARY JUDGMENT
                                   )  AND REMANDING FOR ADDITIONAL
MICHAEL J. ASTRUE,                 )  PROCEEDINGS
Commissioner of Social             )
Security,                          )
                                   )
          Defendant.               )
                                   )

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 12, 17.) Attorney Larry A. Weiser represents Rita Rae Clark (Plaintiff); Special Assistant United States Attorney Mathew Pile represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF. No. 24.) After reviewing the administrative record and briefs filed by the parties, **IT IS ORDERED** Plaintiff's Motion for Summary Judgment is **GRANTED,** and the matter is reversed and remanded to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

**JURISDICTION**

On November 16, 2006, Plaintiff protectively filed for Disability Insurance benefits (DIB). (Tr. 111.) She alleged disability due to high blood pressure, fibromyalgia, arthritis and limited mobility in her neck, left knee and back, with an alleged

1   onset date of September 15, 2006. (Tr. 115.)  Benefits were denied

2   initially and on reconsideration.  Plaintiff requested a hearing

3   before an administrative law judge (ALJ), which was held before ALJ

4   R.S. Chester on July 22, 2008. (Tr. 28-79.)  Plaintiff, who was

5   represented by legal counsel, and vocational expert K. Diane Kramer

6   (VE) testified.  The ALJ denied benefits and the Appeals Council

7   denied review. (Tr. 15-27, 1-3.)  The instant matter is before this

8   court pursuant to 42 U.S.C. § 405(g).

9                       **STATEMENT OF THE CASE**

10       The facts of the case are set forth in detail in the transcript

11  of proceedings and are briefly summarized here.  Plaintiff was 65

12  years old at the time of the hearing. (Tr. 37.)  She lived with her

13  spouse in a single level duplex.  She and her spouse are retired

14  with two grown children. (Tr. 38-39.)  Plaintiff had an 8th or 9th

15  grade education, did not obtain a graduate equivalency degree or

16  attend vocational school. (Tr. 40.)  Her past work was as a self-

17  taught bookkeeper/office manager, a job she performed for the family

18  business. (Tr. 40-43.)  She testified she worked at home and

19  supervised the keeping of accounts by reviewing records sent to her

20  by the company bookkeeper. (Tr. 48.)  She testified between 1996

21  and 2006 she was working part-time because of pain from

22  fibromyalgia, left knee problems, and headaches. (Tr. 44.)  She

23  testified after being involved in a motor vehicle accident in 2005,

24  her symptoms worsened and she could no longer sustain work because

25  of pain and inability to concentrate. (Tr. 54.)  Regarding physical

26  limitations, she reported could sit 15 minutes, walk for two blocks,

27  and sit/stand for ten minutes, and needs to nap two times a day due

28  to fatigue. (Tr. 58, 66-68, 72.)  She reported she cooks and does

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 2

light housekeeping, goes camping with her spouse in their motor home, attends church, and socializes with friends and family. (Tr. 59-60.)

**ADMINISTRATIVE DECISION**

The ALJ Chester found Plaintiff met insured status requirements for DIB purposes through December 31, 2008.[1] (Tr. 18, 20.) At step one of the sequential evaluation, he found Plaintiff had not engaged in substantial gainful activity since September 15, 2006, the alleged onset date. (Tr. 20.) At step two, he found Plaintiff had severe impairments of "fibromyalgia; complex tension/migraine headaches; right torn rotator cuff; and osteoarthritis of the left knee." *Id*. He found non-severe impairments of neck arthritis, back pain, incontinence, and irritable bowel. (Tr. 22.) At step three he found Plaintiff's impairments, alone or in combination, did not meet or medically equal an administratively recognized level impairment listed in Appendix 1, Subpart P, Regulations No. 4 (Listings). (*Id*.)

At step four, the ALJ found Plaintiff's testimony was not entirely credible and determined she had the residual functional capacity to perform sedentary work, but was limited to lifting and carrying 10 pounds occasionally and frequently, standing and walking at least two hours and sitting for six hours with a sit/stand option. (*Id*.) He also limited her to occasional climbing of ramps and stairs, crouching, crawling, and overhead work with her right dominant hand; and he found she should avoid climbing ladders, ropes

---

[1]   Disability benefits are sought for the closed period from September 16, 2006, through December 31, 2008.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 3

1  or scaffolds, extreme cold, noise, hazardous machinery or heights.

2  (*Id.*)

3      Considering the entire record, Plaintiff's credible testimony

4  and VE testimony, the ALJ determined Plaintiff could still perform

5  her past work of bookkeeper "as actually and generally performed."

6  (Tr. 25-27.)  He concluded Plaintiff was not under a disability from

7  September 15, 2006, through the date of his decision.  (Tr. 27.)

8                          **STANDARD OF REVIEW**

9      In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

10  court set out the standard of review:

11          The decision of the Commissioner may be reversed only
        if it is not supported by substantial evidence or if it is
12      based on legal error. *Tackett v. Apfel*, 180 F.3d 1094,
        1097 (9th Cir. 1999). Substantial evidence is defined as
13      being more than a mere scintilla, but less than a
        preponderance. *Id.* at 1098. Put another way, substantial
14      evidence is such relevant evidence as a reasonable mind
        might accept as adequate to support a conclusion.
15      *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the
        evidence is susceptible to more than one rational
16      interpretation, the court may not substitute its judgment
        for that of the Commissioner. *Tackett*, 180 F.3d at 1097;
17      *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595,
        599 (9th Cir. 1999).

18

19          The ALJ is responsible for determining credibility,
        resolving conflicts in medical testimony, and resolving
20      ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
        Cir. 1995).  The ALJ's determinations of law are reviewed
21      *de novo*, although deference is owed to a reasonable
        construction of the applicable statutes. *McNatt v. Apfel*,
21      201 F.3d 1084, 1087 (9th Cir. 2000).

22

23      It is the role of the trier of fact, not this court, to resolve

24  conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If evidence

25  supports more than one rational interpretation, the court may not

26  substitute its judgment for that of the Commissioner.  *Tackett*, 180

27  F.3d at 1097;  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

28  Nevertheless, a decision supported by substantial evidence will

still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v),.1520(g); 416.920(a)(4)(v), .920(g); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 5

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) improperly rejected her testimony; (2) failed to include all her limitations in the hypothetical question presented to the VE; (3) improperly rejected lay testimony; and (4) found she could still perform her past relevant work. (ECF No. 13 at 12.)

**DISCUSSION**

**I.   Credibility**

The Commissioner's credibility determination must be supported by findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).   If there is no affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).   Under the first step, the claimant must produce objective medical evidence of an underlying medically determinable impairment, and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986).  However, once medical evidence of an impairment is presented, the ALJ cannot reject a claimant's symptom testimony because the severity alleged is not supported by

objective medical evidence. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Once the *Cotton* test is met, the ALJ must evaluate the credibility of the claimant by considering the objective medical evidence along with treatment history; daily activities; work record as well as the claimant's reputation for truthfulness; inconsistencies in her testimony, or between her testimony and conduct; and observations of physicians and third parties with personal knowledge of the claimant's symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1-39 (9th Cir. 2008); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In addition, an adjudicator may draw adverse inferences from a claimant's failure to seek treatment for months after the alleged onset of disability. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

If the ALJ finds a claimant's statements are not entirely credible, he need not reject totally a claimant's symptom testimony. The ALJ may find the claimant's statements about pain to be credible to a certain degree, but discount statements based on his interpretation of evidence in the record as a whole. *Social Security Ruling (SSR)* 96-7p. If the ALJ's credibility findings are supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan*, 169 F.3d at 600; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("Credibility determinations are the province of the ALJ."). However, an ALJ's failure to articulate specific "clear and convincing" reasons for rejecting Plaintiff's subjective complaints is reversible error. *Orn v. Astrue,* 495 F.3d 625, 640 (9th Cir. 2007).

As discussed above, Plaintiff testified she is extremely limited in her ability to sit, stand, and walk due to back pain and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 7

left knee problems.   She also stated she needed to lie down two times a day to rest.   (Tr. 24, 25, 69, 72.)   Nonetheless, she reported a social life that included attending her grandchildren's sporting events, camping in a motor home with her spouse, attending church, cooking breakfast for her grandson, and dinners out and visits with friends and family. (Tr. 24, 59-62.)   She testified she suffered no side effects from medication and was able to do light housekeeping during the day with rest breaks.   (Tr. 57, 58.)   She also testified that if her headaches are not averted by medication, she has to go to the hospital for an injection, or is "down" for three or four days.   (Tr. 51, 55.)

After summarizing Plaintiff's testimony, ALJ Chester found her impairments could be expected to cause her alleged symptoms, but her statements were not credible to the extent they precluded performance of her past work.   (Tr. 23-25.)   He gave the following reasons for discounting her testimony: treatment of her impairments has been routine and conservative; no treating or examining doctor has opined she is unable to perform work activities; the record shows gaps in treatment for alleged symptoms; and she stopped taking prescribed medication for symptoms (including headaches and fibromyalgia) without consulting her doctor, even though she reported less pain and no side effects. (Tr. 25.)   These are "clear and convincing" reasons supported by the record to discount Plaintiff's symptom testimony.

For example, the record shows in February 2006 she saw Dr. Bender for headache pain.   Dr. Bender noted the recent motor vehicle accident in November 2005, and her report of increasing frequency of headaches.   He also noted that he had not seen her since October

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 8

2004, a significant gap in treatment given the severity alleged by Plaintiff. (Tr. 179.)   Dr. Bender prescribed medication for migraines and sleep problems. *Id*.

After her motor vehicle accident in November 2005, Plaintiff was treated routinely through December 2006, for chronic back pain and headache pain. (Tr. 180-193.)   Treating physicians also assessed fibromyalgia, migraine headaches, hypothyroidism and elevated blood pressure. (Tr. 185, 191.)   A combination of mild exercise and medication was recommended for the fibromyalgia by treating physician David Dean, M.D. (Tr. 187, 191.)   In September 2006, Plaintiff described her headaches as more frequent since the vehicle accident, but stated they were "identical to a headache she has had frequently for the last 20 years." (Tr. 182.)   She was treated with injections for headache pain and referred to her primary care provider for headache management. (Tr. 183, 194.)   The record includes treatment records from a chiropractor in January 2007, and physical therapy in March and April 2007. (Tr. 196-98, 207-18.)

There are no treating physician records between December 2006 and June 2007, when Plaintiff saw her orthopedist regarding right shoulder pain and treatment options (Tr. 219-22), and again in May 2008, to discuss treatment for her shoulder and left knee pain. (Tr. 240.)   Plaintiff testified conservative treatment of these conditions has continued. (Tr. 52.)   In addition, Plaintiff saw her treating physician in May 2008 for fibromyalgia treatment after she had discontinued her medication without discussing it with the doctor. Her medication was re-started. (Tr. 252-53.)   These reports of infrequent visits and routine and conservative treatment support the ALJ's credibility determination. *Parra v. Astrue*, 481

1  F.3d 742, 751 (9th Cir. 2007).

2      Although Plaintiff's examining and treating physicians did not
3  question her credibility, the ALJ properly considered medical
4  evidence and found no neurological abnormalities were noted, no
5  severe restrictions on her activities were recommended, and her
6  physicians did not opine she should refrain from work activities.
7  (Tr. 25.)  The record also shows Plaintiff, without consulting her
8  doctor, discontinued taking prescribed medication for fibromyalgia,
9  pain, and hypothyroidism.   (Tr. 180, 252.)  As found by the ALJ,
10 the cessation of medication for allegedly disabling symptoms
11 undermines Plaintiff's credibility.  (Tr. 25); *Tommasetti v. Astrue*,
12 533 F.3d 1035, 1039 (9th Cir. 2008).

13     Regarding the ALJ's finding that Plaintiff's report of daily
14 activities is unreliable because it cannot be objectively verified,
15 this reason is neither specific nor "clear and convincing."  (Tr.
16 25.)  Likewise, the ALJ erred in discounting Plaintiff's symptom
17 testimony because medical evidence does not support the degree of
18 severity alleged.  (*Id.*)  *Lester*, 81 F.3d at 834; *Cotton* 799 F.2d at
19 1407.  However, because the ALJ gave other "clear and convincing"
20 reasons to discount Plaintiff's testimony, the erroneous reasons are
21 harmless.  *Carmickle v. Astrue*, 533 F.3d 1155, 1160-63 (9th Cir.
22 2008); *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190,
23 1197 (9th Cir. 2004).

24     The ALJ reasonably found Plaintiff was not as severely
25 restricted as she represented in her testimony.  He articulated
26 "clear and convincing" reasons for discounting her self-reported
27 limitations, and the record supports his reasoning.  Therefore, his
28 credibility determination is affirmed.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 10

**II.  Step Four - RFC Findings and Past Relevant Work**

At step four, the Commissioner makes RFC findings, and determines if a claimant can perform past relevant work.  Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion.  *SSR* 82-62.  This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  These findings should be based on Plaintiff's written work history in the record, as well as her hearing testimony, VE testimony, and/or information contained in the DICTIONARY OF OCCUPATIONAL TITLES (DICOT).  20 C.F.R. § 404.1560(b).

The RFC assessment is a description of a claimant's ability to perform work-related activities.  *SSR* 96-5p.  It is based upon all relevant evidence in the record, including the claimant's own statement.  Past relevant work is work performed in the last 15 years, which lasted long enough to learn it and was substantial gainful employment. 20 C.F.R. §§ 404.1571-.1575; *SSR* 82-61.  The 15-year guide (recency requirement) in determining past relevant work "is intended to insure that remote work experience which could not reasonably be expected to be of current relevance is not applied."  *SSR* 82-62.  Substantial gainful employment is work for which a person normally gets paid, whether or not payment is received.  20 C.F.R. § 404.1571.  Even if work is not "substantial gainful activity," it may evidence an ability to do more work than a claimant actually did. *Id*.

In finding that an individual has the capacity to perform a past relevant job at step four, the ALJ's decision must contain

among the findings the following specific findings of fact:

1.   A finding of fact as to the individual's residual functional capacity;

2.   A finding of fact as to the physical and mental demands of the past job/occupation; and

3.   A finding of fact that the individual's residual functional capacity would permit a return to his or her past job or occupation.  *SSR* 82-62.

The ALJ must assess Plaintiff's ability to perform each of the strength demands; discuss her ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis; and carefully compare her restrictions with exertional demands of sedentary work as defined by the Regulations.  *SSR* 96.8p. The effects of all impairments, mental and physical, as well as resultant pain and fatigue, must be considered in combination in the RFC determination.   Further, step four findings must be based on identified evidence in the record and must be developed and fully explained in the disability decision.  As the Ninth Circuit recently stated, "[t]his requires specific findings" on all three points sufficient "to insure that the claimant really can perform his past relevant work."  *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir. 2001).

Here, the ALJ did not make the required function by function assessment at step four.   He failed to articulate sufficiently specific findings regarding the effect of Plaintiff's impairments in combination (including documented pain and fatigue due to fibromyalgia), and the physical and mental demands of Plaintiff's past relevant work in her family business.   He also failed to

discuss her ability to perform work in an ordinary work setting on a regular and continuing basis.

It is noted on independent review that Plaintiff's testimony describing her work as a "bookkeeper," and the description in written disability reports are not consistent.  For example, in application paperwork, she reported that between 1996 and September 2006, she worked 8 hours a day, five days a week for a boiler repair business (Tr. 115, 131.)  She reported she used machines, tools or equipment, technical knowledge/skills, and did writing, reports or similar duties.  She represented her work required lifting and carrying less than 10 pounds. (Tr. 116.)  Her self-reported duties included: "Bookkeeping, government reports, waiting on customers, phone answering, selling product, payroll accounting." (Tr. 131.) She also indicated she supervised three people 80% of her time.  *Id*. In her December 11, 2006, paperwork, she stated "the only difference on my job the last couple of years is that I could not hold down any hours.  No more than 10 minutes of sitting or standing at one time to work on anything without my body being completely stone [sic] up." (Tr. 141.)

At the hearing, however, Plaintiff testified she worked for the same family-owned company well over 30 years as a "self-taught" bookkeeper. (Tr. 50.)  She stated she had an 8th grade education and no computer skills.  (Tr. 40, 51.)  Plaintiff testified she worked full-time up until about 1966, after which she worked part-time for the same business "overseeing the bookkeeping."[2]  (Tr. 49-50.)  She

---

[2]    The court notes on independent review that Plaintiff testified she worked "gratis" for many of the years she and her

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 13

described her job duties over the last 15 years as tracking the business payables and receivables, which differs significantly from the written reports discussed above. (Tr. 42.) Specifically, she testified she "overlooked" printed materials mailed to her by the company bookkeeper (who had entered the data and created the accounting spreadsheet on a computer) to make sure entries were made in the proper category. (Tr. 49.) She testified she worked her own hours, part-time, from her home in Spokane; after reviewing the computer-generated spreadsheets mailed to her by the company bookkeeper, she would call the bookkeeper with corrections, questions and instructions. (Tr. 41, 44.) Although the ALJ rejected to some degree Plaintiff's self-reported physical limitations and pain complaints, he did not reject her description of her limited job duties performed over the last 15 years. (Tr. 25.) The ALJ failed to explain his resolution of conflicts in the evidence regarding the demands and duties of Plaintiff's past relevant work (*i.e.,* over the past 15 years). Given Plaintiff's unrejected testimony that she only worked part-time in a home setting, a discussion of her ability to sustain work in an ordinary job setting is critical. *Pinto*, 249 F.3d at 845.

---

spouse owned the business. (Tr. 47; *see also* Tr. 106-10, *Earnings Report*.) She testified her spouse drew a salary for both of them because "it was a self-owned business." (Tr. 48.) Under the Regulations, even though Plaintiff did not receive pay directly, this work is considered substantial gainful activity. 20 C.F.R. § 404.1572(b)(work activity is gainful if usually done for pay or profit, "whether or not a profit is realized").

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 14

Independent review of the hearing transcript also reveals that in seeking vocational expert evidence regarding Plaintiff's past work, the ALJ did not clarify which job duties and demands were included in Plaintiff's past work experience. Rather, the hypothetical individual upon which the VE based her testimony was described generally as someone with Plaintiff's "background, experience, training and education," and the RFC described above. (Tr. 75.) Because the record has conflicting information regarding exactly what Plaintiff's past relevant duties were, and there is no evidence that the VE factored in Plaintiff's 8th or 9th grade education, limited job experience, and lack of computer or other technology skills, the court is unable to determine if Plaintiff really can perform her past relevant work. *Pinto*, 249 F.3d at 845; *SSR* 82-62 (past work experience must be considered carefully to assure available facts support step four findings).

Not only is there conflicting evidence regarding Plaintiff's past work as actually performed, the VE's testimony is ambiguous as to whether Plaintiff can perform the functional demands of the general occupation classification identified as her past relevant work. *Pinto*, 249 F.3d at 845-46; *see also SSR* 82-61 (claimant is not disabled if she retains RFC to perform actual functional demands of past work OR functional demands of the occupation as generally required). The record shows the VE simply referred to the DICOT and concluded, without explanation, that Plaintiff's work was "best described" as a Bookkeeper.[3]  (Tr. 74.)   The Commissioner's policy

---

[3]  The DICOT description for *Bookkeeper* is as follows:

Keeps records of financial transactions for establishment,

ruling instructs that "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." *SSR* 82-61.

It is the Commissioner's responsibility to ensure the credibility, completeness, and quality of the ALJ's vocational expert report. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). Unless the record includes evidence to support the assumptions upon which the expert's testimony is based, the vocational expert's opinion is "meaningless." *Id*. In this case, reliance on a generic classification to identify Plaintiff's past relevant work is reversible error. *Pinto*, 249 F.3d at 845. Because there are unresolved ambiguities and conflicts in the occupational evidence in the record, the ALJ's step four findings are not supported by substantial evidence. The ALJ did not explain

> using calculator and computer: Verifies, allocates, and posts details of business transactions to subsidiary accounts in journals or computer files from documents, such as sales slips, invoices, receipts, check stubs, and computer printouts. Summarizes details in separate ledgers or computer files and transfers data to general ledger, using calculator or computer. Reconciles and balances accounts. May compile reports to show statistics, such as cash receipts and expenditures, accounts payable and receivable, profit and loss, and other items pertinent to operation of business. May calculate employee wages from plant records or time cards and prepare checks for payment of wages. May prepare withholding, Social Security, and other tax reports. May compute, type, and mail monthly statements to customers. May be designated according to kind of records of financial transactions kept, such as Accounts-Receivable Bookkeeper (clerical), and Accounts-Payable Bookkeeper (clerical). May complete records to or through trial balance.
> *GOE: 07.02.01 STRENGTH: S GED: R4 M4 L3 SVP:6 DLU:87*

DICOT 210.382-014.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND REMANDING FOR ADDITIONAL PROCEEDINGS - 16

1   adequately his step four findings as directed by the Commissioner's
2   policy ruling; therefore, remand is required.
3   **III. Remedy**
4       The question that remains is whether this case should be
5   reversed and remanded for further proceedings or for the payment of
6   benefits.   The decision to remand for benefits or further
7   proceedings is within the discretion of the court.   *Pitzer v.*
8   *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).   Remand for further
9   proceedings is appropriate when further administrative proceedings
10  could remedy defects, *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir.
11  1989), or are necessary to develop a sufficient record. *McAllister*
12  *v. Sullivan,* 888 F.2d 599, 603 (9th Cir. 1989).   Here, resolution of
13  evidentiary conflicts, and additional evidence and findings are
14  necessary.   On remand, the ALJ shall obtain additional evidence as
15  necessary to make sufficient step four findings.   In a new decision,
16  he shall re-evaluate Plaintiff's past work experience and resolve
17  conflicts in the occupational evidence with specific findings.   The
18  ALJ also will address lay testimony of record and give specific,
19  "germane" reasons for rejecting or discounting lay opinions
20  regarding Plaintiff's work-related limitations.   *Valentine v.*
21  *Commissioner, Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

22      Based on the ALJ's hypothetical which reflects a complete
23  description and demands of Plaintiff's past relevant work, a
24  vocational expert shall provide specific, relevant evidence "within
25  [the VE's] expertise or knowledge concerning the physical and mental
26  demands of claimant's past relevant work, either as [Plaintiff]
27  actually performed it or as generally performed in the national
28  economy." 20 C.F.R. § 404.1560(b)(2).   The VE shall explain fully

the demands and skills of Plaintiff's past relevant work as actually performed and opine as to whether Plaintiff retains the RFC to perform it.  In addition, the VE shall fully explain the DICOT job classification applicable to Plaintiff's experience, and opine whether Plaintiff is capable of performing the job as generally performed.  *See SSR* 00-4p (VE must explain inconsistencies between VE evidence and DICOT information).  If necessary, the ALJ shall proceed to step five with the assistance of VE testimony. Plaintiff may submit additional relevant evidence regarding past work duties, as well as treatment of and limitations imposed by her impairments. Accordingly,

**IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **GRANTED,** and the matter is remanded to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g) consistent with this decision.

2.    Judgment shall be entered for Plaintiff.

3.    Defendant's Motion for Summary Judgment **(ECF No. 17)** is **DENIED.**

4.    Application for attorney's fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide copies to counsel for Plaintiff and Defendant.

DATED May 10, 2011.


_____S/ CYNTHIA IMBROGNO_____
UNITED STATES MAGISTRATE JUDGE